# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  4:05-cr-40098 |
| ) | |
| RAMON I. GARCIA, ) | |
| ) | |
| Defendant. ) | |

## ORDER & OPINION

This matter is before the Court on Defendant Ramon I. Garcia's Amended Motion for Compassionate Release (dkt. 88). At the Court's direction, Probation has submitted a report (dkt. 89) and the Government has responded (dkt. 90). The matter is ripe for review. The Court understands the arguments advanced in the briefing on the original motion (dkts. 81, 84, 85) to be the position of the parties except where stated otherwise. For the reasons stated herein, Defendant's Amended Motion (dkt. 88) is denied.

### BACKGROUND

Defendant Garcia is seventy years old and diabetic. He is currently serving a 240-month sentence for possession of cocaine with intent to distribute and conspiracy to distribute cocaine, imposed on September 7, 2007. At the present time, he is incarcerated in Fort Dix, New Jersey.

The instant motion arises from the ongoing COVID-19 pandemic; at least twelve inmates and one staff member at FCI Fort Dix have tested positive for COVID-

19, according to the parties' submissions. Defendant seeks compassionate release on the ground that, due to his age and medical condition, he has a heightened risk of suffering severe complications should he contract COVID-19 and is unable to protect himself from infection while incarcerated. If released, he would live with his daughter and her family in Massachusetts.

## LEGAL STANDARD

The First Step Act of 2018 modified 18 U.S.C. § 3582(c)(1)(A) to allow incarcerated defendants to seek compassionate release from a court on their own motion after exhausting administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf. A sentence may be reduced under § 3582(c)(1)(A) where a defendant is 70 years old and has served at least 30 years in prison or "extraordinary and compelling reasons warrant such a reduction." In either case, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). The current policy statement outlines four categories which constitute "extraordinary and compelling reasons": (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) "other reasons" as determined by the Director of BOP. U.S.S.G. § 1B1.13. Additionally, the policy statement requires the defendant not be "a danger to the safety of any other person or to the community" pursuant to 18 U.S.C. § 3142(g).

**DISCUSSION**

Defendant's request for compassionate release does not fall under the reasons enumerated by the United States Sentencing Commission or the one specific circumstance detailed by Congress. He therefore requests the Court find he has demonstrated other "extraordinary and compelling circumstances." Defendant urges this is in the Court's authority (dkt. 81 at 6–9); the Government argues it is not (dkt. 84 at 6–10). District Courts have split on the matter and this Court has yet to directly confront it. For the reasons stated herein, the Court concludes it is unable to make an independent determination of whether non-enumerated other reasons constitute extraordinary and compelling circumstances under the present legal regime.

## I. Legal Background

As a general proposition, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Compassionate release is an exception to this rule. Prior to the First Step Act of 2018, a defendant seeking compassionate release needed to request it from the Director of the Bureau of Prisons (BOP Director); courts could only grant a motion seeking such a reduction from the person serving in that role. 18 U.S.C. § 3582(c)(1)(A) (2018). Even then, courts were required to find "extraordinary and compelling reasons warrant[ing] such a reduction" unless the defendant met a specific set of criteria not relevant in this case. 18 U.S.C. § 3582(c)(1)(A) (2018). Additionally, the reduction had to be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A) (2018).

The Sentencing Commission is required to promulgate "general policy statements regarding . . . the sentence modification provisions set forth in section[ ] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). It is required to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission's policy statement is found at U.S.S.G. § 1B1.13. It was last amended on November 1, 2018. The operative text merely restates the statutory standard, but begins "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13.

The commentary, however, provides the required guidance. The Sentencing Commission sets forth three specific extraordinary and compelling reasons—a defendant's medical condition, age combined with deterioration because of aging, and family circumstances—as well as a so-called catch-all provision, which allows release where "[a]s determined by the [BOP Director], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the enumerated reasons. U.S.S.G. § 1B1.13 (commentary). The commentary also reiterates, "[a] reduction under this policy statement may be granted only upon motion by the [BOP Director] pursuant to 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. § 1B1.13 (commentary). Finally, the Sentencing Commission states "[a]ny reduction made pursuant to a motion by the Director of the Bureau of Prisons for the reasons set forth in subdivisions (1) [listing extraordinary and compelling reasons or a defendant 70 years of age who has served 30 years] and (2) [requiring the defendant

4

not be a danger to the community or any other person] is consistent with this policy statement." U.S.S.G. § 1B1.13 (commentary).

In December 2018, Congress passed the First Step Act of 2018. As relevant to this matter, the First Step Act allowed defendants to move in court for compassionate release where the BOP Director declined to or failed to expediently bring a motion on the defendant's behalf. 18 U.S.C. § 3582(c)(1)(A). The statutory regime governing compassionate release remains otherwise unchanged.

So does the Sentencing Commission's policy statement, but due to inability to act rather than decision. The Sentencing Commission is supposed to have seven voting members. 28 U.S.C. § 991(a). Members of the Sentencing Commission serve six-year terms. 28 U.S.C. § 992(a). They may, however, continue to serve until either "a successor has taken office" or the end of the "session of Congress that commences after the date on which the member's term expired." 28 U.S.C. § 992(b)(2). A quorum of four voting members is required to promulgate a policy statement. 28 U.S.C. § 994(a). The terms of two voting commissioners expired at the end of 2018, leaving only two voting commissioners in service; at the time there were already three vacancies. *U.S. Sentencing Commission Publishes for Comment Proposed Amendments to the Federal Sentencing Guidelines; Holds Final Public Meeting of the Current Commission*, United States Sentencing Commission (Dec. 13, 2018), https://www.ussc.gov/about/news/press-releases/december-13-2018. As of the date of this Opinion, the Sentencing Commission still lacks a quorum.

The Court may only grant a reduction "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's catch-all provision expressly allows only the BOP Director to determine whether reasons other than those specifically listed are extraordinary and compelling. U.S.S.G. § 1B1.13. But, as stated, the Sentencing Commission has not amended—or been able to amend—the policy statement to reflect the current legal reality. So, can the Court determine extraordinary and compelling circumstances exist when they not enumerated and have not been so determined by the BOP Director?

Although there is no controlling precedent, there is a wealth of opinions in which other courts have grappled with this issue. Three lines of analysis have developed. Some courts have determined the policy statement is controlling and courts may not independently determine whether a proffered reason is extraordinary and compelling, but instead must look only to the enumerated examples and decisions by the BOP Director. *E.g. United States v. Lynn*, No. 89-cr-0072, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019) *appeal dismissed,* No. 19-13239-F, 2019 WL 6273393 (11th Cir. Oct. 8, 2019); *United States v. Shields*, No. 12-cr-0041, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019). Some have concluded U.S.S.G. § 1B1.13 allows courts to make the determination of whether extraordinary and compelling circumstances exist, understood against the backdrop of the First Step Act. *United States v. Redd*, ___ F. Supp. 3d ___, No. 97-cr-00006, 2020 WL 1248493, at *6–7 (E.D. Va. Mar. 16, 2020). And some have concluded that because U.S.S.G. § 1B1.13 applies only to

6

motions brought by the BOP Director, there is no applicable policy statement with which a court's determination must be consistent when a motion is brought by a defendant rather than the BOP director. *Id.*[1] Put another way, the Court must make two determinations: whether U.S.S.G. § 1B1.13 is an applicable policy statement to the instant motion and, if so, whether it allows the Court to determine if extraordinary and compelling circumstances are present.

## II.   The Policy Statement is Applicable

Courts finding the policy statement inapplicable have advanced two lines of argument. First, some courts have focused on the language in the policy statement requiring the motion be brought by the BOP director and concluded "[t]here is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act. By its terms, the old policy statement applies to motions for compassionate release filed by the B[O]P Director and makes no mention of motions filed by defendants." *United States v. Beck*, ___ F. Supp. 3d ___, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019). Second, some courts have focused on the requirement in § 994(a)(2)(C) that the Sentencing Commission detail procedures under the statute, arguing the policy statement applies to a past version of the statute. "Because the Commission's statutory authority is limited to explaining

---

[1] The current circumstances make attempts to collect and consider every case on this issue impracticable. Of the 334 cases citing U.S.S.G. § 1B1.13 on Westlaw, 152 of them occurred during April 2020. Similarly, 93 of the 249 cases citing U.S.S.G. § 1B1.13 on Lexis occurred during April 2020. Not all of these cases confront the specific issue here, but the glut of caselaw makes it impossible to both consider every case and issue a ruling in a timely fashion. Accordingly, the Court's analysis will focus on the cases and reasoning specifically cited by the parties.

the appropriate use of sentence-modification provisions under the *current* statute, 28 U.S.C. § 994(a)(2)(C), an amendment to the statute may cause some provisions of a policy statement to no longer fall under that authority, as they no longer explain an appropriate use under the amended statute." *United States v. Cantu*, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019). This Court is not persuaded by either line of argument.

It is certainly true that the portions of U.S.S.G. § 1B1.13 which purport to restrict the ability to file a motion for compassionate release to the BOP Director have been overridden by the First Step Act. But, "there is no comparable inherent incompatibility between a statute allowing defendants to move for compassionate release and a policy statement allowing BOP a role in determining whether compassionate release is warranted, and thus no basis for deeming the policy statement overridden." *Lynn*, 2019 WL 3805349, at *4. The language in the policy statement which would prevent it from applying, by its terms, to the instant motion is the very language which can no longer be said to be operative. The definition of extraordinary and compelling circumstances, by contrast, stands.

The argument that the policy statement is invalid for not interpreting the current statute fails for similar reasons. Recall, the Sentencing Commission was given two mandates by Congress: to enact general policy statements, 28 U.S.C. § 994(a)(2)(C), and to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). Even if the Court agreed with the *Cantu* court that the general policy statements must to reflect the current version of the statute, nothing in the statute was changed that directly effects

8

the meaning of extraordinary and compelling circumstances. Accordingly, the Sentencing Commission's promulgations pursuant to § 994(t) would not be invalidated.

In sum, the Court cannot conclude the policy statement's definition of extraordinary and compelling reasons is inapplicable. The question becomes whether the Court may determine whether a proffered reason is extraordinary and compelling in light of the First Step Act.

### III. The Policy Statement Does Not Allow Courts to Determine New Extraordinary and Compelling Circumstances

"[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). Some portions of the policy statement and commentary—the repeated statements that only the BOP Director may make a motion, for instance—are clearly no longer authoritative. But the Court does not agree the definition of extraordinary and compelling circumstances is necessarily incompatible with the First Step Act.

The rationale for finding U.S.S.G. § 1B1.13 was overridden by the First Step Act to allow courts as well as the BOP Director to make determinations of new extraordinary and compelling circumstances is well explained by the *Redd* court:

> Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and

9

> compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination.

*Redd*, 2020 WL 1248493, at *7. Thus, restricting courts' review to the enumerated reasons and those determined by the BOP Director would "effectively preserve to a large extent the BOP's role as the exclusive gatekeeper, which the First Step Act substantially eliminated." *Id.*

This Court agrees the Sentencing Commission's decision to vest discretion in the BOP director was due to the gatekeeping function set up by Congress. But it did not have to. Even before the First Step Act, the BOP Director was not required by statute to determine conclusively what were, or were not, extraordinary and compelling reasons. The BOP Director's function was to make a motion; aside from determining a lack of frivolity so the motion could be ethically made, BOP was nowhere required to screen claims. The Court does not doubt Congress intended the BOP Director to function as a screen, but courts were the only actors tasked with determining whether a particular motion presented extraordinary and compelling reasons.

Likely to streamline the process, the Sentencing Commission allowed all extraordinary and compelling circumstances to be determined by the BOP Director. But it could just as easily have given that discretion to courts. It chose not to do so. The Court has no doubt the current policy statement is a relic. The Court also does not doubt the Sentencing Commission would revise the policy statement to do so now, were it able. But the definition of "extraordinary and compelling reasons" does not directly conflict with the text of the First Step Act; although it is a barrier to the clear

intent of Congress, it is not necessarily inconsistent with the statute Congress passed. *See Kleber v. CareFusion Corp.*, 914 F.3d 480, 482 (7th Cir.), *cert. denied,* 140 S. Ct. 306 (2019) (stating the judiciary's "role is to interpret the words Congress enacts into law without altering a statute's clear limits."). The Court therefore concludes the policy statement has not been overridden by the First Step Act to allow courts the same discretion conferred to the BOP Director by the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13.

## IV. Application

Having concluded the policy statement remains binding, the Court finds it cannot grant Defendant's motion. Where "neither the § 1B1.13 commentary nor BOP Program Statement 5050.50 identify [a proffered reason] as an 'extraordinary and compelling reason' warranting a sentence reduction," a court may not independently decide whether or not the reason is extraordinary and compelling. *United States v. Saldana*, ___ F. App'x ___, No. 19-7057, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020) (unpublished). Although heightened risk of infection and heightened danger from a deadly disease might fit the ordinary definition of "extraordinary and compelling," were the Court allowed to consider them, Defendant has made no argument that they fall within the commentary or program statement. His motion is accordingly denied.

Three concluding thoughts are in order. First, if Defendant's Eighth Amendment rights are being violated as he suggests—and the Court takes no position on this issue—there may yet be other remedies available to him. *See Glaus v. Anderson,* 408 F.3d 382, 387–88 (7th Cir. 2005). Although the Court makes no

11

comment on the likelihood of success under other forms of relief, it is worth noting that compassionate release may not be the only avenue to press COVID-19-related requests.

Second, scores of federal judges—if not hundreds—have been forced to reckon with this knotty interplay of statute and regulation because the President and the Senate have not even minimally staffed the Sentencing Commission despite having years to do so. Even before the current crisis, this was perplexing. Now, however, energy from already strained federal courts is being diverted to consider a problem which should never have existed. To the extent there is friction between the First Step Act and the policy statement, it is because the staffing of the United States government is not a priority to the elected branches. And while this Court does not reach the issue of whether the present pandemic might justify compassionate release in this case, it seems prisoners ought to be able to make that argument unimpeded by what is, essentially, a glacially paced if not frozen hiring process.

Finally, the BOP Director has the ability to mitigate the current situation by issuing more concrete guidance as to what constitutes extraordinary and compelling circumstances. Probation's report and the Government's response indicate Defendant's request for compassionate release was denied by BOP because it concluded he presented a danger; there is no indication whether it found the current pandemic to constitute extraordinary and compelling circumstances. The question of danger is capable of judicial review and indeed is committed to the judiciary in addition to BOP. The BOP Director could make the criteria and situations for

extraordinary and compelling circumstances—especially related to the current crisis—clear. This would allow the judiciary to play at least part of the role Congress intended.

## CONCLUSION

For the foregoing reasons, Defendant's Amended Motion (dkt. 88) is DENIED.

SO ORDERED.

Entered this 28th day of April 2020.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
