## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Case No.  4:05-cr-40098 |
| ) | |
| RAMON I. GARCIA,  ) | |
| ) | |
| Defendant.  ) | |

## **ORDER**

    This matter is before the Court on Defendant Ramon I. Garcia's Second Amended Motion for Compassionate Release (dkt. 98). At the Court's direction, Probation previously submitted a report (dkt. 89) examining Defendant's proposed release plan in his prior motion, which the Court understands to be unchanged. The Government has responded (dkt. 99). The matter is ripe for review.

### BACKGROUND

    Defendant Garcia is 70 years old and diabetic. He is currently serving a 240-month sentence for possession of cocaine with intent to distribute and conspiracy to distribute cocaine, imposed on September 7, 2007. At the present time, he is incarcerated in Fort Dix, New Jersey.

    The instant motion arises from the ongoing COVID-19 pandemic; at least fourteen inmates and one staff member at FCI Fort Dix have tested positive for COVID-19, according to the parties' submissions in this and earlier iterations. Defendant seeks compassionate release on the ground that, due to his age and

medical condition, he has a heightened risk of suffering severe complications should he contract COVID-19 and is unable to protect himself from infection while incarcerated. If released, he would live with his daughter and her family in Massachusetts.

## LEGAL STANDARD

The First Step Act of 2018 modified 18 U.S.C. § 3582(c)(1)(A) to allow incarcerated defendants to seek compassionate release from a court on their own motion after exhausting administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on their behalf. A sentence may be reduced under § 3582(c)(1)(A) where (1) a defendant is 70 years old and has served at least 30 years in prison; or (2) "extraordinary and compelling reasons warrant such a reduction." In either case, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). The current policy statement outlines four categories which constitute "extraordinary and compelling reasons": (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) "other reasons" as determined by the Director of BOP. U.S.S.G. § 1B1.13. Additionally, the policy statement requires the defendant not be "a danger to the safety of any other person or to the community" pursuant to 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2).

## DISCUSSION

This matter has returned to this Court because the Government conceded to an argument Defendant never made. This highly unusual circumstance is worth

commenting on—the Court is displeased. During the initial briefing, the parties assumed Defendant's circumstances did not fall within the three specifically defined reasons under U.S.S.G. § 1B1.13 or any reason delineated by the Director of BOP in his discretion pursuant to the fourth category. They therefore joined issue on whether the Court had authority to consider his proffered reasons either because the policy statement was wholly inapplicable or because the catchall category of reasons committed to the discretion of the Director of BOP should be understood to vest that discretion in courts as well in light of the First Step Act. The Court denied Defendant's first request because his release plan involved living with a woman he had brutally and sexually assaulted. (Dkt. 87). But, when Defendant raised his request again, the Court expended considerable resources to determine the thorny question of the policy statement's validity and meaning in light of the First Step Act. Ultimately, the Court concluded it lacked authority to recognize reasons not listed by the Sentencing Commission as "extraordinary and compelling." (Dkt. 91). Defendant appealed. (Dkt. 93).

On June 4, 2020, the Solicitor General filed a brief in the Supreme Court asserting it was the position of the Department of Justice that "an inmate's diagnosis with a medical condition that the CDC has identified as a risk factor for COVID-19, and from which the inmate is not expected to recover, presents an 'extraordinary and compelling reason[]' that may warrant compassionate release if other criteria are also met." Reply in Supp. of Application for Stay, *Williams v. Wilson*, No. 19A1047, at 18, n.4 (June 4, 2020). Four days later, the Government requested remand in this matter,

conceding Defendant had presented extraordinary and compelling reasons under U.S.S.G. § 1B1.13 comment 1(A)(ii). Mot. for Remand, *United States v. Garcia*, No. 20-1716 (7th Cir. 2020), ECF no. 9 at 8. At no point in this litigation, here or before the Seventh Circuit, had Defendant taken the position that his circumstances were sufficient for one of the enumerated reasons in the policy statement.

The parties' method of litigating Defendant's request is unsatisfactory. The Court expended considerable resources to examine a difficult question of law: the interaction between the First Step Act and the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13, which was not updated to reflect the First Step Act's modifications. It did so in an expedited manner in light of the circumstances. Apparently, however, the parties viewed its opinion as merely advisory. By conceding when it did, the Government deprived the Seventh Circuit of an opportunity to settle this open and vexing question of law. A question of law which, the Court notes, ought not exist because the Government could fill the gap between the First Step Act and the policy statement if BOP were simply to exercise its authority under the policy statement to deal with the compassionate release cases in the context of COVID-19 or if the Executive prioritized recreating a quorum on the Sentencing Commission.

Moreover, the litigation of this case has been incredibly wasteful. Defendant, who is at risk from a deadly disease, lost potentially valuable time. The cost was also borne by the public, in the form of the publicly funded salaries of the attorneys on both sides of this case. The highest levels of the Department of Justice have behaved

in an inexcusably belated and shoddy manner in responding to the flood of compassionate release requests.

The Court will not, of course, allow the foregoing to impact its analysis of the instant matter. The parties have agreed Defendant has demonstrated extraordinary and compelling reasons for compassionate release. The Court has some reservations about accepting their specific theory; the subsection they claim is applicable requires a medical condition "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," U.S.S.G. § 1B1.13 comment 1(A)(ii), which seems inconsistent with the Government's assertions regarding BOP's efforts to protect inmates from COVID-19, (*e.g.* doc. 84 at 6). But although the theory is not well-developed, the Court will move on to the remainder of the inquiry.

The Court cannot conclude that Defendant is not a danger to the safety of any other person or the community. *See* 18 U.S.C. § 3142(g). The Court has already discussed Defendant's history of domestic violence elsewhere in this matter. (Dkt. 87). Defendant argues this risk should not prevent his release, however, due to Defendant's age and the fact he would be living with his daughter, rather than a romantic partner; on the latter front, Defendant maintains "since [he] will be living with his daughter rather than a domestic partner, the risk of domestic violence approaches zero." (Dkt. 98 at 3–4). Additionally, Defendant argues his domestic violence offenses are 15 and 22 years old. (Dkt. 98 at 4).

5

The Court finds these arguments unpersuasive at best and counterproductive at worst. Although the Court recognizes older offenders are less likely to recidivate than younger, Defendant Garcia has already recidivated as an older offender; his present offense occurred 15 years ago, when he was around 55 years old. More concerning is that the incapacitory function of prison appears to have been the only deterrence to his recidivism. His criminal history reveals that following his first conviction in 1989, whenever he was not incarcerated he was committing domestic violence and other violations. (Dkt. 66 at 8–11). This makes the age of his domestic violence offenses cut against his argument. The reason his most recent domestic violence offense is 15 years old is more likely because he has been incarcerated for 15 years, not because he has rehabilitated. And as for the offense 22 years ago, it was followed by a period of incarceration; he was released for only three years before being caught reoffending.

Finally, the Court is not convinced that living with his daughter as opposed to a current or former romantic partner sufficiently reduces the risk. Even if the Court could be certain Defendant's daughter and her family would be safe—which it cannot—it would remain the case that in 2005, unable to continue abusing his prior victim, Defendant simply found a new one. The same could well happen again. In sum, Defendant's history of domestic and sexual violence prevents the Court from concluding his release would not present a danger to any other person or the community as a whole. His request for compassionate release must therefore be denied.

## Conclusion

For the foregoing reasons, Defendant's Second Amended Motion (dkt. 98) is DENIED.

SO ORDERED.

Entered this 24th day of June 2020.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
